AO 91 (Rev. 11/11) Criminal Complaint

FILED
OCT 13 2017
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ______ DEPUTY CLERK

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

United States of America
v.
FNU LNU, aka Hiram Enrique Velez

*Defendant(s)*

Case No. 2:17-MJ-0183 DB

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of March 11, 2009 in the county of Sacramento in the Eastern District of California, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1542 | False statement in application and use of passport |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

*Complainant's signature*

Wei C. Hung, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/13/2017

*Judge's signature*

City and state: Sacramento, California

Hon. Debrorah L. Barnes, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT OF SPECIAL AGENT WEI HUNG IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT, ARREST WARRANT AND SEARCH WARRANT**

I, Wei Hung, being duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AFFIANT BACKGROUND

1. I am a Special Agent with the Diplomatic Security Service ("DSS"), which is an agency of the United States Department of State, and have been since 2015. DSS Special Agents are empowered under 22 U.S.C. § 2709 to investigate crimes including passport fraud, visa fraud, and identity theft, and to apply for and execute search and arrest warrants. Since 2015, I have been assigned to the San Francisco Field Office, where I investigate offenses involving passport fraud and identity theft.

2. I have training in the preparation, presentation, and service of criminal complaints, arrest warrants, and search warrants, and have been involved in the investigation of a variety of offenses again the United States. I have executed arrest warrants and search warrants in previous cases.

## II. PURPOSE OF AFFIDAVIT

3. I make this affidavit in support of, and to establish probable cause for, the issuance of a criminal complaint and arrest warrant, charging FIRST NAME UNKNOWN, LAST NAME UNKNOWN (hereinafter "FNU LNU" or "SUBJECT"), a.k.a Gustavo Araujo Lerma, a.k.a Araujo Lerma, a.k.a Gustavo Lerma, a.k.a. Hiram Enrique Velez, a.k.a Hiram Velez, a.k.a Enrique Velez, a.ka. Hiram Enrique Velez Seda, with making materially false statements on a passport application in violation of 18 U.S.C § 1542. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe SUBJECT applied for a renewed United States passport and falsely stated in such application that his name was "Hiram Enrique Velez."

4. I further submit this affidavit in support of, and to establish probable cause for, the issuance of a search warrant to search the residential property located at 38 De Fer Circle, Sacramento, CA 95823 (hereinafter, "SUBJECT PREMISES"), which is further described in Attachment A, attached hereto and fully incorporated herein by this reference. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that the SUBJECT PREMISES contains evidence, instrumentalities, and fruits of 18 U.S.C. § 1542 (Passport Fraud), 18 U.S.C. § 1028A (Aggravated Identity Theft), 18 U.S.C. § 1425 (Procurement of Naturalization Unlawfully), 18 U.S.C. § 611 (Voting by Aliens) and 52 U.S.C § 20511 (Voter Fraud), as described below and in Attachment B, attached hereto and incorporated by this reference. I request that the search warrant authorize the search of all of the rooms, attics, basements, and all other parts therein, whether locked or unlocked, and surrounding grounds, garages, storage rooms, and outbuildings of any kind, attached or unattached, locked or unlocked, located on the SUBJECT PREMISES, and the seizure of the items listed in Attachment B.

5. This affidavit is based on my personal knowledge, discussions with other law enforcement agents and State Department personnel, and review of various records and documents obtained during this investigation. This affidavit sets forth only those material facts that I believe are necessary to establish probable cause for the issuance of a criminal complaint, arrest warrant, and search warrant.

## III. RELEVANT STATUTES

6. The Passport Act of 1926, as amended, was in full force and effect throughout the period of this investigation. The Act, codified in 22 U.S.C. § 211a, authorizes the United States Secretary of State to grant and issue United States passports under rules prescribed by the President and/or other federal laws. Some of these rules are that a person wanting a United States passport must complete and submit an application to the United States Department of State and must submit proof of American citizenship, usually a birth certificate or an expired passport, and proof of identity, usually a driver's license, and a Social Security Number, with their application.

7. 18 U.S.C. § 1542 states, in pertinent part: "Whoever willfully and knowingly makes any false statement in an application for [a] passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws . . . [s]hall be fined under this title, imprisoned not more than . . . 10 years (in the case of the first or second such offense if the offense was not committed to facilitate such an act of international terrorism or a drug trafficking crime), or 15 years (in the case of any other offense), or both." 18 U.S.C. § 3291 provides a ten year statute of limitations for a violation of 18 U.S.C. § 1542.

8. 18 U.S.C. § 1028A states, in pertinent part: "Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." Subsection (c) specifies that "the term 'felony violation enumerated in subsection (c)' means any offense that is a felony violation of . . . (2) section 911 (relating to false personation of citizenship); . . . (6) any provision contained in chapter 69 (relating to nationality and citizenship); (7) any provision contained in chapter 75 (relating to passports and visas); . . . [or] (10) any provision contained in chapter 8 of title II of the Immigration and Nationality Act (8 U.S.C. 1321 et seq.) (relating to various immigration offenses)."

9. 18 U.S.C. § 1425 states, in pertinent part: "(a) Whoever knowingly procures or attempts to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship; or (b) Whoever, whether for himself or another person not entitled thereto, knowingly issues, procures or obtains or applies for or otherwise attempts to procure or obtain naturalization, or citizenship, or a declaration of intention to become a citizen, or a certificate of arrival or any certificate or evidence of nationalization or citizenship, documentary or otherwise, or duplicates or copies of any of the foregoing — Shall be fined under this title or imprisoned not more than… 10 years (in the case of the first or second such offense, if the offense was not committed to facilitate such an act of international terrorism or a drug trafficking crime), or 15 years (in the case of any other offense), or both."

10. 18 U.S.C. § 611 states, in pertinent part: "It shall be unlawful for any alien to vote in any election held solely or in part for the purpose of electing a candidate for the office of President, Vice President, Presidential elector, Member of the Senate, member of the House of Representatives, Delegate from the District of Columbia, or Resident Commissioner" with certain exceptions. Any person who violates § 611 shall be fined or imprisoned not more than one year.

11. 52 U.S.C. § 20511 states, in pertinent part: "A person, including an election official, who in any election for Federal office . . . knowingly and willfully deprives, defrauds, or attempts to deprive or defraud the residents of a State of a fair and impartially conducted election process, by . . .the procurement, casting, or tabulation of ballots that are known by the person to be materially false, fictitious, or fraudulent under the laws of the State in which the election is held, shall be fined . . . or imprisoned not more than 5 years, or both."

## IV. JURISDICTION

12. As discussed more fully below, the investigation involves criminal violations that were either begun or committed within the Eastern District of California – specifically, in Sacramento, California, where SUBJECT resides.

## V. FACTS SUPPORTING PROBABLE CAUSE

13. There is probable cause to believe that SUBJECT committed passport fraud, for the first time in 1992, again in 1999 and most recently in 2009, by applying for and receiving U.S. passports in the assumed identity of "Hiram Enrique Velez," a now-deceased U.S. citizen whose identity SUBJECT appears to have began fraudulently using over 20 years ago. Using the false identity, SUBJECT married Maria Eva Manriquez (now Maria Eva Velez), a foreign national, in Los Angeles in 1992. She was already married in Mexico to and had children with an individual named Gustavo Araujo Lerma, which may be the true identity of SUBJECT. It appears SUBJECT and his wife committed immigration and naturalization fraud by obtaining legal permanent resident status and ultimately U.S. citizenship for his wife based on her purported status as the family member of a U.S. citizen. SUBJECT also committed voting fraud by voting in the identity of Hiram Velez in 20 federal, state and local elections in the past 20 years. There is probable cause to believe that during and in relations to the felonies described above SUBJECT committed aggravated identity theft.

### A. SUBJECT submitted a passport renewal application in 2009 in the identity of Hiram Velez, which was flagged as potentially fraudulent and triggered investigation of his prior passport applications.

14. On March 11, 2009, a person who purported to be "Hiram Enrique Velez" applied for a U.S. Passport (DS-82 U.S. Passport Renewal Application #316714534) by mail from Sacramento, CA, which is located in Sacramento County in the Eastern District of California. At the time of execution of the application, SUBJECT stated that his Social Security Number was XXX-XX-9302 (redacted) and provided his prior U.S. Passport #055606554, date of issue April 16, 1999, date of expiration April 16, 2009, as proof of identity and citizenship. The application

for SUBJECT's prior U.S. Passport #055606554 listed United States Passport Book #034418286 as a previously issued passport. United States Passport Book #034418286 had issued in response to an application dated August 28, 1992, which reflects that the applicant had presented a birth certificate in the name of "Hiram Enrique Velez Seda" as evidence of citizenship. The photos and signatures on all three passport applications appear to correspond to the same person.

| Year of Passport Application | Photo | Signature |
|---|---|---|
| 1992 | | |
| 1999 | | |
| 2009 | | |

15. On June 29, 2009, U.S. Passport Book #456402198 with an expiration date of June 28, 2019 was issued to SUBJECT in the name of Hiram Enrique Velez with a date of birth of September 16, 1956 and place of birth of Puerto Rico.

16. On December 18, 2013, SUBJECT's passport application was referred by the Fraud Prevention Manager at the Charleston Passport Center to the Diplomatic Security Service, San Francisco Field Office, for investigation due to the discovery by a Government Accountability Office audit that the Social Security Number XXX-XX-9302 (redacted) provided by the SUBJECT was reported as matching a deceased identity in the Social Security Administration Death Master File.

**B. Agents verified that the true Hiram Velez, a Puerto Rico Resident, had died in 1997.**

17. On July 21, 2014, a request was made to the Diplomatic Security Service San Juan, Puerto Rico Residence Office (hereinafter DS San Juan) for assistance in the verification of birth and the acquisition of any Department of Motor Vehicle or arrest photos of Hiram Enrique Velez. DS San Juan responded that per the Puerto Rico Demographic Registry/Vital Statistics, a Birth Record exists showing date of birth as 09/16/1956, as well as a Marriage Record to Gloria E. Quinones Vargas on 05/22/1975, and a Death Record showing a date of death as 09/20/1997. DS San Juan obtained a certified copy of the Death Certificate from the Puerto Rico Demographic Registry. DS San Juan also obtained the below photos associated with a January 1996 arrest of Hiram Velez in Puerto Rico, which do not match the photos of SUBJECT submitted on the passport application.



**POLICIA DE PUERTO RICO**

**MUGSHOT PROFILE**




NAME: VELEZ SEDA
HIRAM
ALIAS #1: CONEJO
ALIAS #2:
BOOKING NO: 000006020013

PRPD NO: 010006819166
STATE ID #:
FBI #:
SSN: [redacted]9202
DOB: 09/16/1956
PLACE OF BIRTH:
BOOKING DATE: 01/16/1996



**PHYSICAL DESCRIPTION**

RACE: W
COMPLEXION: WHITE
SEX: M
HEIGHT: 506
WEIGHT: 180
HAIR COLOR: BLK
EYE COLOR:
BUILD: MEDIUM
TEMPERAMENT: PASSIVE

TATOOS
1.
2.
3.

18. On July 30, 2014 DS San Juan agents Johnny Bencosme and Jairo Saravia interviewed Carmen Lilliam Seda Cuebas, the mother of Hiram Enrique Velez. Special Agents Bencosme and Saravia officially identified themselves to Carmen Lilliam Seda Cuebas. The agents requested identification from her, and she produced her driver's license. Special Agent Bencosme presented Seda Cuebas with a copy of SUBJECT's Passport Application and asked if

she recognized the person in the photo. Seda Cuebas stated she has never seen the individual before and does not know him. When asked if Seda Cuebas recognized the biographical information on SUBJECT's Passport Application, Seda Cuebas stated she recognized the name, date of birth, and place of birth as that of her son, Hiram Enrique Velez Seda. Special Agent Bencosme asked if Seda Cuebas had a photo of her son Hiram Enrique Velez Seda. Seda Cuebas then presented Special Agent Bencosme with a photo and an old Puerto Rico Driver's License of her son Hiram Enrique Velez Seda, the latter of which is below. Neither the photos nor the signature on the Driver's License match the photos or the signatures on SUBJECT's passport applications.




19. Special Agents Bensocme and Saravia also interviewed Nelson Velez Seda, the brother of the true Hiram Enrique Velez. Velez Seda provided his Puerto Rico Driver's License as proof of identity. Special Agent Bencosme presented Nelson Velez Seda with a copy of SUBJECT's Passport Application and asked if he recognized the person in the photo. Nelson Velez Seda stated he has never seen the individual before and does not know him. Special Agent Bensocme read the biographical information of SUBJECT's Passport application to Nelson Velez Seda. He stated he recognized the name and the place of birth as that of his brother, Hiram Enrique Velez Seda.

**C. Further investigation indicated that SUBJECT had used the stolen identity to obtain naturalization and U.S. citizenship for his wife.**

20. A review of the United States Citizenship and Immigration Services Alien File (or "A-File") of Maria Eva Velez, the wife of SUBJECT, showed the following:

- On August 25, 1992, SUBJECT under identity Hiram Enrique Velez appears to have married Maria Eva Manriquez in Los Angeles. This is reflected in a "Certificate of Confidential Marriage," certified August 23, 1995, found in Maria Velez's A-File. The marriage certificate stated that Maria Eva Manriquez was never married before. Maria Eva Manriquez changed her name to Maria Eva Velez. The certificate of confidential marriage lists Hiram Enrique Velez's date of birth as September 26, 1956. However, all three of SUBJECT's passport applications and official Puerto Rico government records list Velez's date of birth as September 16, 1956.

- In 1995, Maria Eva Velez applied to be a Lawful Permanent Resident with SUBJECT's assumed identity of Hiram Enrique Velez as the United States citizen sponsor and spouse.

- In 1996, Maria Eva Velez's legal permanent resident status was approved under the IR6 classification, which refers to a foreigner who married a U.S. citizen.

- Maria Eva Velez's A-File contained a certification of birth issued by the Commonwealth of Puerto Rico Department of Health in the name of Hiram Enrique Velez Seda with the issue date of June 17, 1993.

- In 2012, Maria Eva Velez applied for naturalization listing SUBJECT's identity of Hiram Enrique Velez as her spouse and a U.S. citizen. Maria Eva Velez's naturalization application, which she signed under oath, states that her spouse was a U.S. citizen by the name of Hiram Enrique Velez, DOB September 16, 1956, SSN XX-XX-9302 (redacted). It also states that she was not married prior to the marriage to Hiram Enrique Velez, that she had never been married to more than one person at the same time, and had never given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal.

- Maria Eva Velez naturalized as a United States citizen on November 1, 2012.

21. Marriage and birth certificates obtained from the Guanajuato civil registry in November 2016 seem to indicate that the defendant may be Gustavo Araujo Lerma. The marriage certificate shows that Maria Eva Manriquez Guerrero (28) married Gustavo Araujo Lerma (27) on June 21, 1982 in Leon, Leon, Guanajuato, Mexico. No divorce record was located for this marriage. This marriage was not reflected in the Los Angeles marriage certificate of Maria Eva Manriquez nor any documents related to her immigration. Mexican birth certificates reflect that Maria Eva Manriquez and Gustavo Araujo Lerma had two children in Mexico. No death certificate for Gustavo Araujo Lerma was located and no records were found in Mexico for Gustavo Araujo Lerma after 1992.

22. SUBJECT, using the identity of Hiram Enrique Velez, sponsored the two children born in Mexico to Maria Eva Manriquez and Gustavo Araujo Lerma for lawful permanent

resident status. On the applications, SUBJECT indicated both individuals were his children and checked "no" to the question "Are you related by adoption?"

**D. SUBJECT used his fraudulently-obtained passports to travel repeatedly between the United States and Mexico.**

23. U.S. Customs and Border Protection travel records for SUBJECT list several international trips.

- On March 19, 2003, SUBJECT traveled from Dallas Fort Worth International Airport to Guadalajara International Airport using U.S. Passport # 055605664;
- On March 25, 2003, SUBJECT traveled from Guadalajara International Airport to Meadows Field Airport in California using U.S. Passport # 055605664;
- On November 23, 2005, SUBJECT traveled from Fresno Yosemite International Airport to Guadalajara International Airport using U.S. Passport # 055605664;
- On November 30, 2005, SUBJECT traveled from Guadalajara International Airport to Long Beach Municipal Airport using U.S. Passport # 055605664;
- On February 4, 2010, SUBJECT traveled from Guadalajara International Airport to Long Beach Municipal Airport using U.S. Passport # 456402198.

**E. FBI records revealed arrests within the United States of three individuals using the "Hiram Velez" identity: the true Hiram Velez, SUBJECT, and another individual.**

24. FBI fingerprint records indicate three individuals have been arrested in the United States using the Hiram Velez identity. It should be noted that not all arrests effectuated by state and local law authorities are loaded into the FBI database.

- The true Hiram Velez, FBI# 942667JA8, was arrested several times in Chicago from 1988 – 1994 on charges including possession of controlled substances and theft. He was also arrested in San Juan, Puerto Rico in 1995 on a narcotics charge.
- Rafael Cerventes, FBI# 794438JA6, has also been arrested under the Velez identity and has a lengthy history of arrests in San Francisco spanning from 1991 through 2000, on charges ranging from narcotics offenses to extortion. Certain of these arrests resulted in convictions and terms of incarceration.
- SUBJECT, FBI# 752516WB1, was arrested in Sacramento under the Velez identity in 2002 on a charge of felony second-degree burglary. He was also arrested in 2010 on a burglary warrant, which appears to have been issued against the Velez identity being used by Cerventes, according to information I received from the San Francisco Police Department.

**F. Agents visited SUBJECT at his residence.**

25. On July 8, 2016, Special Agent Thomas Cerchie and I went to the residence of SUBJECT at the address of 38 De Fer Cir, Sacramento, CA 95823. The garage was open and a Hispanic woman, approximate age of 65, was in the garage. Based on known photographs, I recognized the woman to be Maria Eva Velez, the wife of SUBJECT. I approached the open garage and asked Maria Eva Velez if her husband was home. Maria Eva Velez did not speak proficient English but understood enough and entered the house through the garage and returned shortly with her husband, who I recognized to be SUBJECT based on previous passport applications.

26. I asked SUBJECT if he was Hiram Enrique Velez to which he replied yes. I asked if SUBJECT had any form of identification to which SUBJECT presented California Identification Card# B4417230 in the name of Hiram Enrique Velez. I asked if SUBJECT had a passport. SUBJECT went inside the home and returned with US Passport Book# 456402198 and US Passport Card# C01565781. Both depicted SUBJECT under the name Hiram Enrique Velez.

27. I showed SUBJECT a photo-lineup containing photographs of the true Hiram Enrique Velez and the true Mr. Velez's mother (Carmen Lilliam Seda Cueba) and asked if he recognized them. SUBJECT stated that he did not recognize them. I displayed a picture of the photo ID of Carmen Lilliam Seda Cueba to SUBJECT and asked SUBJECT if he recognized the individual's picture. SUBJECT firmly requested an attorney at that time and I terminated the interview.

**G. SUBJECT fraudulently registered to vote and fraudulently voted in the Hiram Velez identity throughout the past two decades.**

28. Records of the Sacramento County Registrar of Voters showed that SUBJECT registered to vote using the false identity of Hiram Enrique Velez.

STATE OF CALIFORNIA
VOTER REGISTRATION FORM

USE BLACK OR BLUE INK—PLEASE PRINT CLEARLY

SOS

1 Mr. / Mrs. / Miss / Ms. — LAST NAME (Only): VELEZ
FIRST NAME (Only): HIRAM — MIDDLE NAME (Only): E

2 ADDRESS where you live (Number, Street, Ave, Road, Drive, including N, S, E, W) (NO PO BOX/BUSINESS ADDRESS) — APT/UNIT/SUITE: 38 DE FER CIRCLE
CITY: SACRAMENTO — STATE: CA — ZIP CODE: 95823 — COUNTY:

3 IF NO STREET ADDRESS, describe where you live: (Cross Streets, Roads, Section, Range, N, S, E, W)

MAILING ADDRESS: (If different from the address where you live, or PO BOX)

4 CITY — STATE — ZIP CODE — FOREIGN COUNTRY

5 DATE OF BIRTH — Month / Day / Year: 07 16 1956
6 PLACE OF BIRTH – (Specific U.S. State or Foreign Country Only): PUERTO RICO

7 IF YOU HAVE A CA DRIVER'S LICENSE OR CA ID CARD YOU MUST ENTER THE NUMBER HERE: B4417230
IF NOT, YOU MUST ENTER THE LAST 4 DIGITS OF YOUR SOCIAL SECURITY NUMBER.

8 TELEPHONE: 916 7060426 — E-MAIL ADDRESS:

9 POLITICAL PARTY – Fill in one oval
- American Independent Party
- Democratic Party
- Green Party
- Libertarian Party
- Peace and Freedom Party
- [X] Republican Party
- I Decline to State a Political Party
- Other ________ (Specify)

FOLD HERE

29. As of the date of this affidavit, the registration and voter history of SUBJECT lists twenty elections that SUBJECT voted in since 1996. Below is voting data for SUBJECT under the Velez identity, copied from a screenshot from the Sacramento County Voter Registration and Vote by Mail Ballot Lookup tool, (available at: https://pollingplacelookupen.saccounty.net/LookupPollingPlace_VoterRegLookup.aspx).

| Election Date | Election Name | Voted Status | Provisional Status | Party |
|---|---|---|---|---|
| 08 Nov 2016 | 2016 General Election | Voted at Polling Place | | |
| 07 Jun 2016 | 2016 Presidential Primary Election | Voted at Polling Place | | Republican |
| 04 Nov 2014 | 2014 General Election | Voted at Polling Place | | |
| 03 Jun 2014 | 2014 Statewide Direct Primary | Voted at Polling Place | | Republican |
| 06 Nov 2012 | 2012 General Election | Voted at Polling Place | | |
| 02 Nov 2010 | 2010 Consolidated General Election | Voted at Polling Place | | |
| 04 Nov 2008 | 2008 November General Election | Voted at Polling Place | | |
| 05 Feb 2008 | Presidential Preference Primary Feb 2008 | Voted at Polling Place | | Republican |
| 08 Nov 2005 | 2005 SPECIAL STATEWIDE ELECTION | Voted at Polling Place | | |
| 02 Nov 2004 | Presidential General Election 2004 | Voted at Polling Place | | Republican |
| 02 Mar 2004 | Primary Election | Voted at Polling Place | | Republican |
| 07 Oct 2003 | Statewide Special Election | Voted at Polling Place | | |
| 05 Nov 2002 | General Election | Voted at Polling Place | | |
| 05 Mar 2002 | Primary Election | Voted at Polling Place | | |
| 07 Nov 2000 | GENERAL ELECTION | Voted at Polling Place | | |
| 07 Mar 2000 | PRIMARY ELECTION | Voted at Polling Place | | |
| 03 Nov 1998 | GENERAL ELECTION | Voted at Polling Place | | |
| 02 Jun 1998 | OPEN PRIMARY ELECTION | Voted by Absentee Ballot | | |
| 05 Nov 1996 | GENERAL ELECTION | Voted at Polling Place | | |
| 26 Mar 1996 | PRIMARY ELECTION | Voted at Polling Place | | |

## VI. DESCRIPTION OF LOCATION TO BE SEARCHED

30. Based on the investigation to date, I believe that the SUBJECT presently lives at the SUBJECT PREMISES, a residential property located at 38 De Fer Circle, Sacramento, California 95823, which is more fully described in Attachment A.

31. The 2009 U.S. Passport Application and the Voter Registration Form list the address of SUBJECT PREMISES as the mailing address. As stated above, I encountered SUBJECT and his wife at the SUBJECT PREMISES. In September 2017, a 2004 Kia Amante which I had observed at the property the day I interviewed SUBJECT was observed in the driveway of the SUBJECT PREMISES and database checks associated SUBJECT with the SUBJECT PREMISES. In light of the foregoing, I believe that SUBJECT presently resides at the SUBJECT PREMISES.

32. Based on my training and experience, I know that obtaining officially-issued government documents such as the types of documents listed in Attachment B is difficult to do, and once obtained they are not easily relinquished, especially in the case of documents such as a birth certificate, as these items have no expiration date. These documents are often used to obtain more items in an assumed identity, such as driver's licenses, passports, visas, and Social Security cards, which can be further utilized to establish credit, obtain an assumed nationality,

buy property, commit crimes, cross borders, receive benefits, and create a fully-formed false identity; those documents can also be sold to other subjects for the purposes of assisting in the commission of other crimes.

33. Based on my training and experience, these documents, images, and items, once obtained, are usually kept, possessed, maintained, and secreted in the residence and vehicles of persons who commit identity theft, their immediate relatives and cohabitants, and are commonly used in a repeated manner, as evidenced in the case of the SUBJECT, unless the items are found and seized.

34. Based on my training and experience, documents such as insurance paperwork, tax information, medical paperwork, mail, and other such items commonly contain not only information relating to fraudulent identity, but also correspondence, documents, keepsakes, or information indicating the true identification of an individual, and are commonly kept, maintained, and secured in an individual's residence, storage locations, electronic devices, and vehicles including in locked containers and rooms.

35. As reflected in this affidavit, the investigation to date has revealed that SUBJECT has used the identity of Hiram Enrique Velez, or variants of that alias, since approximately 1992. Based on the investigation and my training and experience, I believe that documents, photographs, journals, and other documents and personal mementos described in Attachment B and evidencing SUBJECT's true identity will be found in the SUBJECT PREMISES described in Attachment A.

36. Based on the facts and information detailed in this affidavit, there is probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 1542 (Passport Fraud), 18 U.S.C. § 1028A (Aggravated Identity Theft), 18 U.S.C. § 1425 (Procurement of naturalization unlawfully), 18 U.S.C. § 611 (Voting by Aliens) and 52 U.S.C § 20511 (Voter Fraud) - including passports, birth certificates, and other identity documents, documents pertaining to SUBJECT's wife's naturalization applications, travel documents, items reflecting or suggesting the SUBJECT's true identity, and the other items listed in Attachment B, incorporated here – will be found in the SUBJECT PREMISES.

**COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS**

37. As described above and in Attachment B, this application seeks permission to search for records that might be found on the SUBJECT PREMISES, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or on other electronic storage media or digital devices. As used herein, the terms "electronic storage media" and "digital devices" include any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop computers, laptop computers, notebooks, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, USB flash drives, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices. Thus, the warrant applied for

would authorize the seizure of electronic storage media and digital devices or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

38. *Probable Cause.* Based on my knowledge, training, and experience, as well as information related to me by agents and others involved in this investigation and in the forensic examination of digital devices, I respectfully submit that if electronic storage media or digital devices are found on the PREMISES, there is probable cause to believe that the records and information described in Attachment B will be stored in the electronic storage media and digital devices for at least the following reasons:

a. Individuals who engage in criminal activity, including making false statements on a passport application in violation of 18 U.S.C § 1542 and aggravated identity theft in violation of 18 U.S.C § 1028A, commonly use electronic storage media for purposes such as to communicate with co-conspirators, digitally fabricate documents, or store on computer hard drives and other electronic storage media documents and records relating to their illegal activity. Criminals store these documents and records, which can include logs of online "chats" with co-conspirators; email correspondence; contact information of co-conspirators, including telephone numbers, email addresses, identifiers for instant messaging and social medial accounts; stolen financial and personal identification data, including bank account numbers, credit card numbers, and names, addresses, telephone numbers, and social security numbers of other individuals; and records of illegal transactions using stolen financial and personal identification data, and to store stolen data for future exploitation.

b. Individuals who engage in the foregoing criminal activity, in the event that they change computers, will often "back up" or transfer files from their old computers' hard drives to that of their new computers, so as not to lose data, including that described in the foregoing paragraph, which would be valuable in facilitating their criminal activity.

c. Computer, smart phone, and other digital device files, or remnants of such files, can be recovered months or even years after they have been downloaded onto an electronic storage medium, deleted, or viewed via the Internet. Electronic files downloaded to an electronic storage medium can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily-available forensics tools. When a person "deletes" a file on a digital device such as a home computer or a smart phone, the data contained in the file does not actually disappear; rather, that data remains on the electronic storage medium until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the electronic storage medium that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space – for long periods of time before they are overwritten. In addition, a digital device's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of electronic storage medium space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve "residue" of an electronic file from an electronic storage medium depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer, smart phone, or other digital device habits.

39. *Forensic Evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic evidence or information that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence or information that establishes how electronic storage media or digital devices were used, the purpose of their use, who used them, and when. Based on my knowledge, training, and experience, as well as information related to me by agents and others involved in this investigation and in the forensic examination of digital devices, I respectfully submit there is probable cause to believe that this forensic electronic evidence and information will be on electronic storage media and digital devices in the PREMISES because:

a. Although some of the records called for by this warrant might be found in the form of user-generated documents or records (such as word processing, picture, movie, or texting files), digital devices can contain other forms of electronic evidence as well. In particular, records of how a digital device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials contained on the digital devices are, as described further in the attachments, called for by this warrant. Those records will not always be found in digital data that is neatly segregable from the hard drive, flash drive, memory card, or other electronic storage media image as a whole. Digital data on the electronic storage media not currently associated with any file can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave digital data on a hard drive that show what tasks and processes on a computer were recently used. Web browsers, e-mail programs, and chat programs often store configuration data on a hard drive, flash drive, memory card, or memory chip that can reveal information such as online nicknames and passwords. Operating systems can record additional data, such as the attachment of peripherals, the attachment of USB flash storage devices, and the times a computer, smart phone, or other digital device was in use. Computer, smart phone, and other digital device file systems can record data about the dates files were created and the sequence in which they were created. This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations. Recovery of this data requires specialized tools and a controlled laboratory environment, and also can require substantial time.

b. Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Whether data stored on electronic storage media or digital devices is evidence may depend on other information stored on the devices and the application of knowledge about how the devices behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how electronic storage media or a digital device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on the device. For example, the presence or absence of counter-forensic programs, anti-virus programs (and associated data), and malware may be relevant to establishing the user's intent and the identity of the user.

## VII. CONCLUSION AND SEALING REQUEST

40. For all the reasons stated above, there is probable cause to believe that SUBJECT made materially false statements in the application of a U.S. Passport in violation of 18 U.S.C. § 1542, fraudulently used the identification of another person in relation to the aforementioned felony in violation of 18 U.S.C. § 1028A , fraudulently sponsored immigration status that procured naturalization for other individuals in violation of 18 U.S.C. §1425, fraudulently voted as an alien in violation of 18 U.S.C. § 611, and fraudulently cast ballots in federal elections in violation of 52 U.S.C § 20511. These criminal violations were either begun or committed in Sacramento, California, within the Eastern District of California.

41. Based on the facts detailed in the affidavit, probable cause exists that evidence, fruits, and instrumentalities of the aforementioned violation exist and will be found within the SUBJECT PREMISES. I respectfully request that a search warrant be issued authorizing the search of the SUBJECT PREMISES, described in Attachment A, for items specified in Attachment B. The aforementioned evidence, fruits, and instrumentalities of the aforementioned violations may be found in location specified in Attachment A in locked, closed, barred, encircled or in other otherwise secured containers. I respectfully request permission to search inside these locked or otherwise secured containers.

42. I ask that this affidavit be sealed, until SUBJECT's arrest or further order of the Court, to protect this investigation. I am aware from my training and experience that evidence is destroyed, individuals flee, and witnesses may be tampered with or become uncooperative when the details known to law enforcement become prematurely available to the targets of a criminal investigation.

43. Under penalty of perjury, I swear that the forgoing is true and correct to the best of my knowledge, information, and belief.

Wei Hung, Special Agent
Diplomatic Security Service
San Francisco Field Office

Approved as to form:

Katherine T. Lydon
Assistant U.S. Attorney

SUBSCRIBED AND SWORN BEFORE ME ON

October 13, 2017

HONORABLE DEBORAH L. BARNES
United States Magistrate Judge
U.S. District Court, Eastern District of California

## ATTACHMENT A

## DESCRIPTION OF SUBJECT PREMISES TO BE SEARCHED (RESIDENCE)

The residential structure located at 38 De Fer Circle, Sacramento, California, 95823, is a one-story single family house, with white and cream walls, with a brown shingle roof, and a brown two car garage (depicted below). There is an archway that leads to the front door of the residence. Address numbers are not visible from 38 De Fer Circle. The authorized search includes the search of all of the rooms, attics, basements, and all other parts therein, whether locked or unlocked, and surrounding grounds, garages, storage rooms, and outbuildings of any kind, attached or unattached, locked or unlocked.



**[END OF ATTACHMENT A]**

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

All evidence, fruits, and instrumentalities of 18 U.S.C. § 1542, 18 U.S.C § 1028A, 18 U.S.C § 1425, 18 U.S.C. § 611, and 52 U.S.C § 20511, including the following in written or electronic form:

1. Birth certificates;
2. Driver's licenses, permits or other identification used for the purposes of driving, conducting or otherwise operating a vehicle or mobile conveyance;
3. Identification documents issued by any Federal, State or local government including but not limited to Passports, Visas, Permanent Resident Alien Cards, Social Security cards, and state- or locally-issued identification cards;
4. Applications for any identification documents including but not limited to Passports, Visas, Permanent Resident Alien Cards, Social Security cards, and state- or locally-issued identification cards;
5. Mail and packages, opened and unopened;
6. Information relating to loans and other financial documentation relating to homes, vehicles, and other mobile conveyances;
7. Bank statements, credit cards, debit cards, electronic benefit cards and other financial instruments and information;
8. Tax documents, returns, Federal and State, filed or unfiled;
9. Items evidencing the identity of persons occupying, possessing, frequenting or controlling 38 De Fer Circle, Sacramento, California, 95823, or property therein;
10. Photographs depicting any of the residents or associates of the persons inhabiting the premises;
11. Medical records referencing the identities or depicting any of the residents or associates of the persons inhabiting the premises;
12. Yearbooks;
13. Educational records;
14. Marriage records or photographs;
15. Voter registration cards;
16. Text messages, notes, emails, and cell phone contacts reflecting the name by which SUBJECT's contacts, including but not limited to his wife, address him;
17. Records relating to applications or petition for immigration, filed or unfiled;
18. Records relating to international and domestic travel, including but not limited to passports bearing the names, aliases, or photographs of the SUBJECT PREMISES' residents;
19. All documents, photographs, journals, diaries, notebooks, and personal correspondence that suggest the true identity of SUBJECT, including but not limited to wedding photos,

birthday photos, family photos, and photos which appear to have been taken in Mexico or prior to the date SUBJECT first started using the false identity;

20. Evidence of SUBJECT's alienage;
21. Evidence reflecting SUBJECT's knowledge that Hiram Velez was a real person;
22. All Electronic (Digital) Media (to include but not limited to computers, hard drives, cellular phones, notebooks, tablets, removable storage devices, etc.), which will be searched offsite for the above evidence and associated metadata.

**[END OF ATTACHMENT B]**