UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
--oOo--

UNITED STATES OF AMERICA,      ) Docket No. 17-CR-195
                               ) Sacramento, California
              Plaintiff,       ) December 10, 2019
                               ) 9:29 a.m.
        v.                     )
                               )
GUSTAVO ARAUJO LERMA           ) Re: Sentencing hearing
                               )
              Defendant.       )

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JOHN A. MENDEZ
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:        HON. McGREGOR W. SCOTT
                          United States Attorney by
                          MS. KATHERINE THERESA LYDON
                          MR. SHEA KENNY
                          Assistant U.S. Attorneys
                          501 I Street, Suite 10-100
                          Sacramento, CA 95814

For the Defendant:        OFFICE OF THE FEDERAL DEFENDER by
                          MR. DOUGLAS J. BEEVERS
                          801 I Street, 3rd Floor
                          Sacramento, CA 95814

Interpreted by:           YOLANDA RILEY-PORTAL (Spanish language)


JENNIFER COULTHARD, RMR, CRR
Official Court Reporter
501 I Street, Suite 4-200
Sacramento, CA 95814
jenrmrcrr2@gmail.com
(312)617-9858


Mechanical Stenography - Computer-aided Transcription

Case 2:17-cr-00195-JAM   Document 174   Filed 05/06/20   Page 2 of 15

SACRAMENTO, CALIFORNIA TUESDAY, DECEMBER 10, 2020

--oOo--

(In open court.)

THE CLERK:  Calling criminal 17-195, the United States v. Gustavo Araujo Lerma.

MS. LYDON:  Good morning, Your Honor; Katherine Lydon here with Shea Kenny on behalf of the United States.

MR. BEEVERS:  Good morning, Your Honor; Doug Beevers from the Federal Public Defender's Office on behalf of the defendant, who's present in custody.  And to report on when --

THE COURT:  Hold on.  I'll allow the interpreter to state her appearance.

THE INTERPRETER:  Good morning, Your Honor; Yolanda Riley-Portal, previously sworn Spanish interpreter.

MR. BEEVERS:  And Your Honor, I believe we're ready because on Wednesday I met with the defendant at the lockup with my interpreter, Mr. Salazar, and only the presentence report, none of the other pleadings, so that it could be interpreted just that report direct before any comments.  So I believe he is ready and it is at this point clear that he has seen -- that he has had the entire report interpreted to him.

THE COURT:  Okay.  The Court will accept that representation.

This is a continuation of the sentencing hearing that was started last Tuesday, December 3rd.  The Court has gone

over and ruled on the informal and formal objections and sees no other reason why we should not proceed with sentencing.

Ms. Lydon, any legal cause why we shouldn't proceed with sentencing this morning?

MS. LYDON:  No, Your Honor.

One minor clarification for the government's benefit. In Your Honor's ruling on the obstruction enhancement was Your Honor expressly finding the three things required by the Ninth Circuit case of Castro:  First that Araujo Lerma gave false testimony; second, on a material matter; and third, that it was with willful intent?

THE COURT:  Yes.

MS. LYDON:  Thank you, Your Honor.

THE COURT:  Just as you argued in your response to the objections.  I adopted all of the arguments in the government's response.

MS. LYDON:  Thank you, Your Honor.

THE COURT:  Okay.

We've already established the guideline ranges of the hearing on December 3rd.  I've reviewed, as I said, the briefs and the recommendations, Ms. Lydon, starting with the government.  Anything further that you want to add?  I think your recommendation is 45 months.  It should be 21 months on Counts 2 and 24 months additional to run consecutive on Count 1; is that right?

MS. LYDON:  Correct, Your Honor.

THE COURT:  Okay.  Anything further you want to add?

MS. LYDON:  No, Your Honor.  Not at this time.

THE COURT:  Pardon?

MS. LYDON:  Not at this time.

THE COURT:  Mr. Beevers, anything further you want to add?

MR. BEEVERS:  Yes, Your Honor.  As to the -- I think even a mid-range sentence would create unwarranted disparity. I think the Court should go toward the low end, as probation recommended.  I think the main thing to look at in this case is that this is not just a one individual case.  This is part of a essentially an immigration issue that has been going on since the '80s.  I would note that if we look at how this crime happened and why it happened, if we accept the government's -- well, accept the facts as you've found would be that the defendant's -- the defendant had a daughter and a son in 1982 and '83 and then in 1986 another son.  So with those three children -- in 1986 is when the United States passed the giant amnesty bill which legalized at least a hundred thousand families in the United States and essentially rewarding them for working illegally in the United States.  That has caused -- in the years since that happened, illegal immigration has increased from 5 million to 10 million people.

This defendant is not unusual in wanting to live and

work in the United States, that is whether it's illegal or not. Millions of people have been -- have done that and done no other type of criminal activity.

In 1987, President Reagan issued a DACA, a Deferred Action for the children of the amnesty people and three years later this defendant purchased documents which would enable him to comply with the stricter rules that were in place going forward. That is -- it's not legal. It's not right, but it's understandable. And I think that the way to look at -- for immigration kind of cases I think guidelines have a great deal of value, but I think in this case if there had been no aggravated identity charge, perhaps a higher end of a sentence would have made sense. But with the aggravated identity theft, that's the teeth in the new immigration system. He gets that teeth. I think as to the other charges I think there is very little disparity between what he did and what the other defendant, Mr. Aroyo, did with the passport, and he received 10 months. His case was too old, so they couldn't charge aggravated identity theft, but he received a low end of the guideline. That defendant pled guilty but at trial this defendant essentially conceded the passport charge.

And in closing, I ask --

THE COURT: I know you keep arguing that and I would essentially disagree with you, even essentially. He still hadn't admitted anything. I don't think he -- I don't expect

him to admit and accept responsibility here this morning. That's just not him.  He thinks he did nothing wrong.  And as much as I appreciate how well you represented him and advocated for him and argued on his behalf, this is a man that has no remorse.  He's shown no remorse, he's accepted no responsibility and thinks he has done absolutely nothing wrong. I mean, he turned his back on his mother, on his wife, on his kids.  I mean, it's so different from anything I've had before that there really is no sentencing disparity here.  I see nothing that warrants in his behavior any type of consideration that you're arguing for.  He's not remorseful.  He never will be remorseful.

I mean to continue to blame this on the State of Illinois is incredible and then to take the stand and just lie under oath and in court in front of me certainly doesn't warrant any consideration for mitigation in this case.  I know it sounds harsh and hard, but that's the truth here.  He's not a man that will ever think that he did something wrong here, and that concerns me.

MR. BEEVERS:  Well, Your Honor, the guideline range already includes -- is not reduced -- as found today --

THE COURT:  I know --

MR. BEEVERS:  -- is not reduced for obstruction.  But it includes the enhancement for obstruction even on the charge that we ask the jury to find him guilty of.  So I think that is

already sort of toward the high end of the sentence if we look at the whole picture. And in terms of the letter that he wrote -- there may not be acceptance in the way that it's normally conveyed, but I think there is a fatalism in this point that going forward he may -- he accepts that he has to go to prison, he has not requested release, he has not -- we are not asking for any extremely low sentence. I'd ask the Court to follow the probation's recommendation and give the low end of the guidelines.

THE COURT: Mr. Lerma, anything you'd like to say before I impose sentence?

THE DEFENDANT: When I was in Chicago, I did not have any documents or a birth certificate. If I had had it, I would have arranged -- I would have gotten my papers correctly like a lot of people did.

I was sold something that a lady sold it to me and she said she suspected that it was the owner of this birth certificate was -- it was a birth certificate.

At that time Illinois DMV was giving -- was doing something that I don't think was right because they were giving license to people who were undocumented for $500. And it wasn't legal because they didn't have a Social Security that was right. The guy who sold it to her, she told me that he was lost in the Dominican Republic and that's how he had told her. Well, since this was connected to the driver's school in the

State of Illinois, I asked them if they could take care of this issue. So she said, well, if you don't have a birth certificate and this guy is kind of lost in the Dominican Republic, I think it could be done, but I'm going to charge you $5,000. That was what was told to me by the driver's school Laredo. And I said I only have $3,000 and he said, well, there's no problem with that. I went to the Secretary of State in Illinois and they gave me my documents. I know that they erased the one who was there and they put my name in it. So from then on I never doubted the seriousness of that institution because it was the state -- the Secretary of State of Illinois that gave it to me.

And I had a normal life with a name that I've always -- that I have now. I had a regular life with the name that I've had of Enrique Valez.

THE COURT: Mr. Lerma, you stole more than a name. You stole a person's identity. You assumed that person's identity. Every time you used Mr. Valez's name and his identity, that was a lie. That's the problem you have. You don't accept the fact that Mr. Valez is a real person. He's not you. He was a real person. You stole his identity. You lied to the State of Illinois. Everything is based on that lie. That's what was clear to the jury. It's obviously clear to me. And that was the point that came out when Ms. Lydon cross-examined you. Everything is built on a lie. You're not

Mr. Valez.  You're not.  Yeah.  That's a real person.  His son came in and testified, pointed at you and said, "That's not my father.  That's not Mr. Valez."

So you can keep telling yourself this story and you can keep trying to blame the State of Illinois, but that's not getting you anywhere, sir.  You broke the law.  You have to accept that responsibility and I have to impose a punishment for that.

I didn't mean to cut you off.  Anything else you want to say?

THE DEFENDANT:  The State of Illinois took a long time to review all of the documents.  They knew I wasn't Mr. Valez, but they were the ones who gave me the identity of Mr. Valez.

THE COURT:  Because you told them that?  You told them "I'm not Mr. Valez, but --"

THE DEFENDANT:  No (in English).

THE COURT:  Yeah, see, you didn't tell them that, yeah, because that would have been a lie.  Yeah.

THE DEFENDANT:  I did tell them.  Of course I did.  They told me I had to learn to speak English, that it was essential.

THE COURT:  See, again, that's not true.  That's not true, Mr. Lerma.  You didn't tell the State of Illinois, "By the way, I'm not this guy, I stole his identity but give me a driver's license anyway."  You didn't do that, sir.

THE DEFENDANT:  The driving school was a connection -- was somehow in cahoots with the Secretary of State of Illinois. They knew what they had to do.

THE COURT:  Anything else?

THE DEFENDANT:  They knew it wasn't me.  They knew -- they actually erased his name and they put me.  They knew it wasn't the same signature.  They knew all that.  They can ask Iran's (phon.) mom what happened to her there in Illinois and they'll tell you the same thing that I'm telling you.

THE COURT:  Okay.  Anything else?

THE DEFENDANT:  Your Honor, I'm sorry that, you know, you have to see that I am -- I don't know anything about law. I don't know any -- I have no schooling and when they gave me that, I thought that that was right.  And then I even bought a headstone with that name where I was going to be buried.

I know a little bit about the Bible and I know that Jacob and Sol, they sold their rights of being first son and in the Bible it says that the right belonged to Sol by law but through history you could see from God, God accepted that and Jacob ended up being the patriarch of the family even though he wasn't supposed to be.

If that guy was selling his own identity, that's not my fault.  He was -- he was a criminal.  I've never been one. God knows -- God is present here and knows that I'm telling the truth.

THE COURT:  Okay.  Anything further?

MR. BEEVERS:  Just, Your Honor, I think his main point is that he didn't intend to actually harm any actual person.

THE COURT:  I understand his point.

MR. BEEVERS:  I think that's --

THE COURT:  I understand.

MS. LYDON:  From the government's perspective, the defendant went on a 25-year fraud run.  This isn't a run-of-the-mill immigration case, this is highly unusual.  And in the course of that fraud run he abused an array of government programs.  He accrued enormous personal benefits, himself and his family, like naturalization for family members, passports to travel back and forth to his home town, the ability to live freely in the United States and to illegally cast ballots in federal elections, which is an incredibly rare crime; but when it occurs, it is serious.  And his characteristics and history can be summed up by his behavior at trial.  As Your Honor pointed out, he took the stand, he lied to the jury for hours and he refused to accept responsibility.  Mid range 45-month sentence we submit is reasonable and will serve the goals of sentencing.

THE COURT:  Okay.  Mr. Beevers, anything else?

MR. BEEVERS:  No, Your Honor.

THE COURT:  All right.  The matter having been submitted to the Court, the Court is prepared to impose

sentence as follows:  The Court has taken into consideration both the sentencing guidelines and the 3553(a) factors.

Also, the Court is intimately familiar with the facts of this case, having presided over the jury trial, including listening to the testimony of Mr. Lerma during that trial. There is no basis for a variance in this case under the 3553(a) factors.  The issue really is whether this should be a high-end, mid-range or a low-end sentence.

The Court agrees with the government's assessment and arguments and does find the government's recommendation of 45 months to be the sufficient but not greater than necessary sentence in this case under the circumstances and these facts.

For those reasons and pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the Defendant Gustavo Araujo Lerma is committed to the custody of the Bureau of Prisons to be imprisoned for a term of 45 months. That term shall consist of 24 months on Count 1 that will run consecutively to all other counts; 21 months on Count 2 that will run concurrently to the sentence imposed on Counts 3 through 7.  The Court will impose 12 months on each of Counts 3 through 7.  Those will run concurrently to each other.

Defendant's ordered to pay a special assessment of $325, payment to begin immediately.  The Court finds the defendant does not have the ability to pay a fine.  Imposition of a fine is waived.

Upon release from prison, the defendant will be placed on supervised release for a term of 24 months.  That will be unsupervised if he is deported.  That term shall consist of 12 months on Count 1 and Counts 3 through 7 and 24 months on Count 2, all to run concurrently for a total term of supervised release of 24 months.

Within 72 hours of release from the custody of the Bureau of Prisons, defendant shall report in person to the probation office in the district to which he is released.

While on supervised release, defendant shall not commit another federal, state or local crime, shall not illegally possess any controlled substances.

Defendant's ordered to cooperate in the collection of DNA as directed by probation.

Defendant's ordered to comply with the standard conditions recommended by the United States Sentencing Commission and adopted by this court.  Those are found on pages 20 and 21 of the presentence report.

Defendant's ordered further to refrain from any unlawful use of a controlled substance.  He is ordered to submit to one drug test within 15 days of release from prison and at least two periodic drug tests thereafter not to exceed four drug tests per month.  There are seven special conditions on page 18 of the presentence report.  All seven of those special conditions are also adopted by the Court.

The Court will recommend the defendant be incarcerated at an institution in California but only in so for as the recommendation accords with the Bureau of Prisons security classification and space availability policies.

And finally, the defendant is advised that you have a right to appeal.  If you desire to appeal, you must file your notice of appeal in writing with the Court within 14 days of today's date.  If you cannot afford an attorney for your appeal, the Court will appoint one for you.

Ms. Lydon, anything further?

MS. LYDON:  I don't think so, Your Honor.  I believe this count was already dismissed, but in an abundance of caution, the government, if it hasn't already, would move to dismiss the conspiracy to unlawfully procure naturalization count from the first indictment.

THE COURT:  It was dismissed at trial, so --

MS. LYDON:  Okay.  Thank you.

THE COURT:  Mr. Beevers, anything further?

MR. BEEVERS:  Just, Your Honor, my client has advised me to file an appeal, and I will do that.

THE COURT:  Okay.  All right.  Defendant's remanded to the custody of the marshals for delivery to the Bureau of Prisons.  Thank you.

MS. LYDON:  Thank you.

(Concluded at 9:53 a.m.)

C E R T I F I C A T E

I certify that the foregoing is a true and correct transcript of the record of proceedings in the above-entitled matter.

/s/ JENNIFER L. COULTHARD          April 16, 2020

                                        DATE

JENNIFER L. COULTHARD, RMR, CRR
Official Court Reporter